IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| M. REZA SALAMI, PH.D., M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18CV794 |
| | ) | |
| JPMORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court upon Defendant Chase Bank, N.A.'s ("Chase") motion to dismiss under Federal Rules of Civil Procedure 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6). (Docket Entries 11, 12.) Plaintiff M. Reza Salami ("Salami") has filed a response (Docket Entry 22), and Chase has filed a reply (Docket Entry 23). This matter is ripe for disposition. For the reasons stated herein, the Court recommends that Chase's motion to dismiss be granted for all claims except Salami's claim under the Unfair and Deceptive Trade Practices Act ("UDTPA").

## I. BACKGROUND

Salami's Complaint concerns interactions and decisions in the context of the Home Affordable Modification Program ("HAMP").[1] (*See generally* Complaint, Docket Entry 2).

---

[1] This District previously outlined HAMP in *Campbell v. CitiMortgage, Inc.*, No. 1:11CV1017, 2014 WL 4924251, at *6 (M.D.N.C. Sept. 30, 2014) (unpublished), *report and recommendation adopted*, No. 1:11CV1017, 2015 WL 127818 (M.D.N.C. Jan. 8, 2015):

> "HAMP… is governed by guidelines set forth by Fannie Mae and the United States Department of the Treasury. The [Servicer Participation Agreements] between mortgage loan servicers and Fannie Mae require the servicers to perform loan modification and foreclosure prevention

Under HAMP, Salami sought from Chase, his loan servicer, a modification to his loan from Bank of America that was secured by his home. (Docket Entry 2-1 at 2-5.) Salami's Complaint concerns both interactions in his applying for a loan modification and Chase's decision(s) regarding whether to issue him a loan modification:

> . . . Chase Bank, NA . . . approved plaintiff loan modification for HAMP Program on December 19, 2015, but Defendant sent the approved document to wrong address. Defendant promised to re-send a new approved document in March 2016. Later on, the Defendant changed its decision and requested the Plaintiff to send the new completed forms and supporting documents again and thus the Plaintiff sent the new Chase Form and supporting documents with about 80 pages for [sic] more than Five times, But [sic] Chase Bank denial [sic] the Loan Modification for not being able to verify the Plaintiff['s] incomes even though the Plaintiff sent them the official incomes document. Plaintiff received the last denial letter in mid July 2018.

(Docket Entry 2 at 4.)

In his Complaint, Salami asserts federal claims for violations of: (1) the Racketeer Influenced and Corrupt Organizations ("RICO") Act; (2) the Real Estate Settlement

---

services specified in the HAMP Guidelines." . . . When considering a HAMP modification, a servicer first must determine whether a homeowner meets the applicable eligibility requirements. . . . If eligible, the servicer implements a Trial Period Plan ("TPP") under new repayment terms . . . . "After the trial period, if the borrower complied with all terms of the TPP Agreement—including making all required payments and providing all required documentation—and if the borrower's representations remained true and correct, the servicer had to offer a permanent modification." . . . Finally, during the modification review period, the servicer must refrain from foreclosing.

(citations omitted).

Procedures Act ("RESPA"); and (3) state law claims for breach of contract, unjust enrichment, and violation of the UDTPA:[2]

> Plaintiff alleges that the handling of his mortgage modification—assignment, assessment of fees, escrow calculations, foreclosure, and communication about the mortgage—was unlawful in a variety of ways and sues . . . Chase Bank, N.A. . . . under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), [ ] the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) . . . . [and] brings claims against Defendant for violations of the North Carolina Consumer Fraud and Deceptive Practices [sic],[3] violations of the Residential License Mortgage Act,[4] breach of contract, and unjust enrichment.

(*Id.* at 6.)

Salami seeks various damages, including "actual" and punitive damages, as well as damages for emotional distress, resultant health damages and medical expenses, and the physical costs of, and time wasted on, preparing futile loan modification applications, as well as a court order for Chase to grant him a loan modification. (*Id.* at 4, 21-22.)

---

[2] Salami also "asks" for judgment declaring Chase's action to be "a breach of the covenant of good faith and fair dealing," and granting relief of "promissory estoppel[.]" (Docket Entry 2 at 22). These "requests" are bare demands that are unsupported by specific factual allegations. They are therefore insufficiently pleaded for the Court to accept them as claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Moreover, they appear to be exactly the same claims set forth in *Durmic v. J.P. Morgan Chase Bank, NA*, No. 10-CV-10380-RGS (D. Mass. Nov. 24, 2010). (*See* Docket Entry 13-1 at 22.)

[3] Both the Court and Chase construe this to mean a claim pursuant to the UDTPA. (*See* Docket Entry 13 at 3.)

[4] Chase correctly notes in its supporting memorandum that no such statute exists under federal or North Carolina law. (Docket Entry 13 at 3 n.5.) If, *arguendo*, the Court were to charitably interpret this to allege violations of the Secure and Fair Enforcement (SAFE) Mortgage Licensing Act, such a purported claim would, nonetheless, fail because the SAFE Act does not create a private cause of action. *Robinson v. Deutsche Bank Nat. Tr. Co.*, No. 5:12-CV-590-F, 2013 WL 1452933, at *13 (citing *Lea v. Grier*, 156 N.C.App. 503, 508, 577 S.E.2d 411, 415 (2003)).

## II. DISCUSSION

### A. Chase's Motion to Dismiss Complaint under Rules 12(b)(2), 12(b)(4), and 12(b)(5)

Chase first asserts that the Court lacks personal jurisdiction over Chase because Chase was given insufficient service of process and, therefore, impliedly, insufficient process. (Docket Entry 13 at 2-4.) "Absent valid service of process, a court does not acquire personal jurisdiction over the defendant and the action must be dismissed." *Shaver v. Cooleemee Volunteer Fire Dep't*, No. 1:07-CV-175, 2008 WL 942560, at *2 (M.D.N.C. Apr. 7, 2008) (unpublished) (citation omitted). However, "objection to sufficiency of process or service of process 'must be specific and point out in what manner the plaintiff has failed to satisfy the requirements….'" *Patterson v. Whitlock*, 392 F. App'x 185, 193 (4th Cir. 2010) (citation omitted). Service of process within the United States on an unincorporated association must occur either "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" (Fed. R. Civ. P. 4(h)(1)(B)) or by following the service of process rules of the state in which the district court where the action is brought is located. Fed. R. Civ. P. 4(e)(1) and 4(h)(1)(A). North Carolina's rules permit service of process on an unincorporated association by delivering the summons and complaint—personally, by specified mailing method, or by designated and specified delivery service—to "an officer, director, managing agent, [ ] member of the [association's] governing body," or other authorized agent, or to someone inside of and in charge of such an individual's office. N.C. Gen. Stat. § 1A-1, Rule 4(j)(8).

In support of its assertion of insufficient service of process and process, Chase simply states, "[t]he summons in this case is not directed to any person authorized to accept service

4

of process on behalf of Chase under [such]… [r]ules….." (Docket Entry 13 at 7.) Process was served in the name of Ms. Ramona Farzad, a firm lawyer, and received by Karen Frey, a paralegal.[5] (Docket Entry 10 at 1.) Also, Ms. Lorianne K. Williams, V.P. and Assistant General Counsel for Chase was served via certified mail on October 19, 2018. (Docket Entry 17). However, Chase does not mention either of them by name or by position or otherwise indicate its awareness that process was served on them. Notwithstanding the burden upon Salami to demonstrate proper service, *see Elkins v. Broome*, 213 F.R.D. 273, 275 (M.D.N.C. 2003), Chase's assertion is thus barebones and fails to sufficiently allege deficiencies in service of process and in process.

Assuming, however, that Chase has not been properly served in this matter, the Court should nonetheless retain Salami's case until adequate service of process is provided. *Vorhees v. Fischer & Krecke*, 697 F.2d 574, 576 (4th Cir. 1983) (citing *Stern v. Beer*, 200 F.2d 794, 795 (6th Cir. 1952) ("If the first service of process is ineffective, a motion to dismiss should not be granted . . . . [T]he Court should…quash [] service of process and . . . retain[ the case] . . . pending effective service.")). Even where there is a technical defect in service, "dismissal is not always mandated where the necessary parties have received actual notice of a suit and where they have not been prejudiced by the technical defect in service." *McCreary v. Vaughan–Bassett Furniture Co.*, 412 F.Supp.2d 535, 537 (M.D.N.C. 2005) (citation omitted). The Court has discretion to dismiss the action or to quash service and allow more time for service of process. *Thomas v. Nelms*, No. 1:09-CV-491, 2013 WL 593419, at *1 (M.D.N.C. Feb. 14, 2013)

---

[5] The Return notes that Ms. Frey may accept service of process on behalf of Attorney Farzad. (Docket Entry 10 at 2.)

5

(unpublished). And "courts generally allow pro se plaintiffs a chance to remedy technical insufficiencies in service of process." *Id.* Thus, Plaintiff's Complaint should not be dismissed on this ground.

**B. Chase's Motion under R. 12(b)(6) for Failing to State Claims**

Chase argues that each of Salami's five purported claims "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).[6] A motion to dismiss under Rule 12(b)(6) for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim to relief is "plausible on its face"

> when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

---

[6] Chase initially moves to dismiss Salami's entire Complaint as an impermissible "shotgun" pleading as it closely resembles the class action complaint in *Durmic*. (Docket Entry 13 at 7-8.) "[A] [s]hotgun pleading is [a] complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading." *SunTrust Mortg., Inc. v. Old Second Nat. Bank*, No. 3:12CV99-JAG, 2012 WL 1656667, at *3 (E.D. Va. May 10, 2012) (internal quotations and citation omitted). Courts disfavor them because their sloppiness selfishly wastes valuable judicial resources, making it harder for other plaintiffs with clearly stated claims to present their grievances to a court. *Holland v. Wells Fargo Home Mortg.*, No. 5:14-CV-00176-MOC, 2015 WL 1432458, at *1 (W.D.N.C. Feb. 13, 2015) (unpublished). Here, a great portion of Salami's Complaint resembles a shotgun pleading. Salami apparently wrote most of the form complaint, (Docket Entry 2 at 1-5), and exhibit, (Docket Entry 2-1), but he largely copied materials from three other sources (a news article, a class action complaint, and a blog post) for many pages of the 18-page memorandum. (*See generally* Docket Entry 2 at 6-23.) As a result, a great portion of the pleading is potentially irrelevant, and somewhat frustrating. Nevertheless, the Court recommends these portions of the Complaint be dismissed on other grounds. As to the UDTPA claim, the undersigned finds that the allegations are personal to Plaintiff and not subject to any "shotgun" allegations.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). That is, "[f]actual allegations must… raise a right to relief above the speculative level." *Twombly* at 555.

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint; it "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To test the legal sufficiency of a complaint, courts should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). But, even while assuming a complaint's alleged facts as true, courts are not bound by its "legal conclusions drawn from the facts" or its "unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

Courts are to liberally construe *pro se* complaints in assessing their sufficiency. *Erickson*, 551 U.S. at 94. Yet, even so, courts "must read the complaint as plaintiff writes it…." *Bender v. Suburban Hosp.*, Inc., 159 F.3d 186, 192 (4th Cir. 1998). Thus, courts evaluate whether factual allegations within a complaint[7] advance each of its claims "across the line from conceivable to plausible." *Walters v. McMahan*, 684 F.3d 435, 439 (4th Cir. 2012).

Of Salami's five purported claims, (1) RICO, (2) RESPA, (3) breach of contract, (4) unjust enrichment, and (5) UDTPA, only the UDTPA claim should survive the 12(b)(6) standard.

---

[7] As Chase notes, this Court is to consider only factual allegations in the Complaint and not any new allegations that Salami made for the first time in his response to this motion. (Docket Entry 23 at 4-5). *Rogers v. Keffer, Inc.*, 243 F. Supp. 3d 650, 663 n.6 (E.D.N.C. 2017) (citing *Campbell v. Wells Fargo Bank, N.A.*, 73 F.Supp.3d 644, 652 (E.D.N.C. 2014)).

7

**1. Salami's Claim under RICO**

Salami's first purported federal claim, that under RICO, should be dismissed because his Complaint fails to allege that Chase committed a predicate offense for a civil RICO claim.

"[A] a civil RICO claim has four essential elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *Whitney, Bradley & Brown, Inc. v. Kammermann*, 436 F. App'x 257, 258 (4th Cir. 2011) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496, (1985)). For the fourth element, it is those "offenses listed in [18 U.S.C.] § 1961 [that] are . . . predicate [offenses]. A plaintiff must prove each prong of the predicate offense to establish the racketeering activity element . . . ." *Clayton v. Stephens*, 6 F. Supp. 2d 480, 485 (E.D.N.C. 1996), *aff'd*, 145 F.3d 1323 (4th Cir. 1998) (citations omitted) (quotation altered). HAMP violations do not qualify as such a predicate offense:

> Only an offense listed in 18 U.S.C. § 1961(1) can serve as a "predicate offense" sufficient to give rise to RICO liability. Allegations that Defendants violated…HAMP do not qualify as predicate offenses because such an offense is not listed in § 1961(1)…. [Thus, the] RICO claim is deficient as a matter of law.

*Hubbard v. Select Portfolio Servicing, Inc.*, No. 16-CV-11455, 2017 WL 3725475, at *6 (E.D. Mich. Aug. 30, 2017) (citation omitted), *aff'd*, 736 F. App'x 590 (6th Cir. 2018), *reh'g denied* (June 28, 2018).

Here, Salami's allegations that Chase violated HAMP are not allegations that Chase engaged in racketeering activity. Additionally, because the Complaint fails to allege that Chase engaged in any other activity that could be racketeering activity, it fails to allege this fourth necessary element of a RICO claim. Therefore, the purported RICO claim should be dismissed.

## 2. Salami's Claim under RESPA

Salami's purported RESPA claim should be dismissed because his alleged communications with Chase related to loan modification—not loan servicing—and thus were not qualified written requests that could subject Chase to RESPA liability.

RESPA dictates how loan servicers must respond to "a qualified written request from [a] borrower…for information relating to the servicing of [a] loan." 12 U.S.C. § 2605(e)(1)(A). A loan servicer's failure to comply with RESPA makes it liable to the borrower. *Id.* § 2605(f).

A "qualified written request" ("QWR") is

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that-
> **(i)** … enables the servicer to identify[ ] the name and account of the borrower; and
> **(ii)** includes a statement [(1),] of the reasons for the belief of the borrower… that the account is in error or [(2),]…regarding other information sought by the borrower[.]

*Id.* § 2605(e)(1)(B). "Servicing", in turn, "means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments . . . as may be required pursuant to the terms of the loan." *Id.* § 2605(i)(3). The Fourth Circuit elaborated in *Poindexter v. Mercedes-Benz Credit Corp.*:

> …[T]he "relating to" component of § 2605(e)[(1)(A)]…ensures that the statutory duty to respond does not arise with respect to all inquiries or complaints from borrowers to servicers…. Instead, *§ 2605(i)(3)'s definition of "servicing" "does not include the transactions and circumstances surrounding a loan's origination*—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement," which "precede the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors."… Applying these general principles[,]…a letter challenging "the terms of the loan and mortgage documents" . . . and "request[ing] modification of

9

> those documents" d[oes] not relate [ ] to servicing" and thus d[oes] not trigger the servicer's [ ] RESPA obligations under § 2605(e).

792 F.3d 406, 413-14 (4th Cir. 2015) (emphasis added) (citations omitted) (quotation altered). Together, § 2605(i)(3) and *Poindexter*'s elaboration clarify that there cannot be a QWR relating to the servicing of a loan until that loan has been issued with settled terms.

In this case, the Complaint does not allege that Salami sent Chase a QWR related to the servicing of a loan, let alone that Chase failed to respond appropriately to any such QWR. The Complaint alleges that Salami repeatedly sent written applications for a loan modification and communicated with Chase regarding their refusal to issue one (*see e.g.*, Docket Entry 2 at 11-12, 14, 19-20; Docket Entry 2-1 at 2-3). However, the Complaint does not allege that Salami sent any written message to Chase either to dispute its handling of payments for an existing loan[8] or to request information about an existing loan. Because the Complaint does not allege that there was a QWR regarding the servicing of a loan and thus cannot allege that Chase mishandled one, the purported RESPA claim should be dismissed.

## 3. Salami's Claim for Breach of Contract

The first of Salami's purported claims under state law, that Chase breached contract, should be dismissed because Salami was not party to HAMP, an agreement between servicers

---

[8] Salami alleges that, sometime in mid-2015, he tried to make three late mortgage payments and Chase refused them, telling Salami "he had to wait until the completion of loan modification [sic]…" (Docket Entry 2 at 20, ¶ 46.) However, Salami fails to allege that he did anything more than make three plain payment attempts, which are not QWRs. *See* 12 U.S.C. § 2605(e)(1)(B).

10

and the government. Moreover, the Complaint fails to plausibly allege that any other contract was breached.[9]

A servicer's participation in HAMP is a contract between a servicer and the federal government—not between a servicer and any of its borrowers, so HAMP itself does not give a borrower any contractual rights against his or her servicer. *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777-78 (4th Cir. 2013). ("[A servicer's HAMP] agreement with the U.S. Treasury was an agreement between the [servicer] and the Treasury, an agreement to which Appellants were not a party and which they have no authority to enforce. Nothing [ ] about that agreement…extend[ed] legal rights to Appellants.") Relying upon *Spaulding*, the District Court for the Eastern District of North Carolina explained the following:

> Plaintiffs also suggest that defendant had a duty to plaintiffs… to modify their loan, or to further pursue modification, prior to proceeding with foreclosure. Plaintiffs suggest, for example, that the "HAMP federal programs" imposed such duty…. That program and its implementing statutes, however, does [sic] not create a private right of action or obligations enforceable by a private plaintiff in civil suit against a loan servicing defendant….

*Pearsall v. Select Portfolio Servicing, Inc.*, No. 7:15-CV-106-FL, 2015 WL 9223076, at *4 (E.D.N.C. Dec. 17, 2015) (unpublished). Even while HAMP itself does not grant borrower any contractual rights, a servicer nevertheless may, under HAMP, choose to form an agreement with one its borrowers that grants that borrower contractual rights. For example, "when a homeowner enters into a TPP [("Trial Period Plan" agreement)] under HAMP, that agreement

---

[9] Of course, the Complaint mentions Salami's mortgage, which is subject to a loan agreement. (*See* Docket Entry 13-2.) However, Salami's implied and explicit assertions that Chase's "handling of his mortgage modification" involved illegal foreclosure and communications about the mortgage, (Docket Entry 2 at 6, 2-1 at 4), are also wholly unsupported by factual allegations and thus not facially plausible. *Twombly*, 550 U.S. 544, 570 (2007).

11

may create legally enforceable contractual rights." *Goss v. Bank of Am., N.A.*, 917 F. Supp. 2d 445, 449 (D. Md.), *aff'd sub nom. Goss v. Bank of Am., NA*, 546 F. App'x 165 (4th Cir. 2013).

Here, because HAMP itself gave Salami no contractual rights, the Complaint's allegations that Chase violated HAMP (*see e.g.*, Docket Entry 2 at 11-14, 19-22; Docket Entry 2-1 at 2-3) are not allegations of a breach of contract.[10] Moreover, because the Complaint fails to otherwise allege sufficient facts to demonstrate a breach of an existing contract between Chase and Salami, this claim should be dismissed.

### 4. Salami's Claim for Unjust Enrichment

Salami's purported unjust enrichment claim should be dismissed because his Complaint fails to allege that Salami provided a benefit to Chase according to a contract implied in law.

"In order to recover on a claim of unjust enrichment, a party must prove that it conferred a benefit on another party, that the other party consciously accepted the benefit, and that the benefit was not conferred gratuitously or by interference in the affairs of the other party." *Se. Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002) (citing *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1980)).

Salami's Complaint fails to allege any facts stating that Chase was enriched by any of the alleged occurrence(s), including by the alleged HAMP violation. Allegations of denials of Plaintiff's loan modification requests is not sufficient facts to identify a benefit conferred to Chase. *See Walker v. Rushmore Loan Mgmt. Servs., LLC,* No. 3:15-CV-607-RJC-DCK, 2016 WL

---

[10] Salami's Complaint seems to assert that Chase, under HAMP, entered a TPP agreement with Salami (Docket Entry 2 at 14, ¶ 4; 20, ¶ 47). Plaintiff's Complaint makes general assertions regarding the procedures of a TPP, (*id.* at 18-19), but alleges nothing beyond a conclusory statement that he complied with the terms of a TPP, (*id.* at 20), which fails to rise to the level of facial plausibility. *Twombly*, 550 U.S. 544, 570 (2007).

3746577, at *6 (W.D.N.C. June 16, 2016) ("Plaintiffs fail to specify the benefit being conferred on Defendants."), *report and recommendation adopted sub nom. Walker v. SGB Corp.,* No. 3:15-CV-00607-RJC-DCK, 2016 WL 3741873 (W.D.N.C. July 11, 2016). Thus, the purported unjust enrichment claim should be dismissed.[11]

## 5. Salami's Claim Under the UDTPA

Salami's final claim, that under the UDTPA, should not be dismissed, because his Complaint sets forth factual allegations necessary to state a plausible claim for relief.

N.C. Gen. Stat. § 75-1.1(a) states: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). "[A]n action for unfair or deceptive acts or practices is a distinct action apart from fraud, breach of contract, or breach of warranty." *Bernard v. Cent. Carolina Truck Sales,* 68 N.C. App. 228, 232, 314 S.E.2d 582, 585, *rev. denied,* 311 N.C. 751, 321 S.E.2d 126 (1984). To state a prima facie UDTPA claim in North Carolina, a party must allege that "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001) (citation omitted)*; see also South Atl. Ltd. P'ship of Tenn., L.P. v. Riese*, 284 F.3d 518, 535 (4th Cir. 2002). Whether an act is deemed unfair or deceptive is "a question of law for the court." *Dalton*, 353 N.C. at 656, 548 S.E.2d at 711 (citation omitted). An act or practice is unfair "if it is immoral,

---

[11] To the extent Plaintiff's unjust enrichment claim could be construed as asserting a violation pursuant to the mortgage loan between Salami and Chase, no such claim could arises from these circumstances. *Campbell*, 2014 WL 4924251, at *12 ("Here, the Deed of Trust governed the Parties' rights with respect to foreclosure, rendering a claim for unjust enrichment inappropriate.").

13

unethical, oppressive, unscrupulous, or substantially injurious to consumers," and is deceptive "if it has the capacity or tendency to deceive." *Ace Chem. Corp v. DSI Transp., Inc.*, 115 N.C App. 237, 247, 446 S.E.2d 100, 106 (1994) (internal citations and quotations omitted).[12]

The Court notes that, although a HAMP violation, as stated earlier, does not in and of itself create a private right of action, allegations that a defendant violated HAMP by using (or in circumstances involving) "unfair or deceptive acts or practices" *can* serve as the basis for a UDTPA claim. *Campbell*, 2014 WL 4924251, at *13 ("Although HAMP did not create a private right of action, 'North Carolina courts have held that violations of a statute designed to protect the public . . . may constitute unfair and deceptive practices . . . even [absent] a [statutory] private right of action.' ") (quoting *In re Hinson*, 481 B.R. 364, 376 (Bankr. E.D.N.C. 2012)).

Chase contends that Salami fails to allege the first element—that Chase engaged in an unfair or deceptive act or practice. Chase states that Salami's "purported UDTPA claim relies on the same allegations underlying his other fatally deficient claims—…that Chase invited him to apply for loan modification but then denied his applications." (Docket Entry 13 at 14). This argument is misplaced. While the Complaint centers on the non-issuance of a loan

---

[12] Additionally, where a plaintiff brings a UDTPA claim in the context of a breach of contract claim, "substantial aggravating circumstances" are also required. *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989). North Carolina state courts added this requirement to combat UDTPA claims becoming "a boilerplate claim in most every complaint based on a commercial or consumer transaction." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (quoting *Allied Distributors, Inc. v. Latrobe Brewing Co.*, 847 F.Supp. 376, 379 (E.D.N.C. 1993)); *see also Ellis v. Louisiana-Pac. Corp.*, 699 F.3d 778, 787 (4th Cir. 2012) (quoting *Gilbane Bldg. Co. v. FRB,* 80 F.3d 895, 903 (4th Cir. 1996)). Here, however, the Court concludes that "the claim should not be dismissed merely because the behavior does not also constitute a breach of contract." *Graves v. Wells Fargo Bank, N.A.*, No. 1:14-CV-398, 2014 WL 12638789, at *3 (M.D.N.C. Nov. 19, 2014) (unpublished). It is necessary to address allegations about such "extra-contractual conduct" as alleged herein. *See id.* ("In its brief in support of its motion to dismiss and response in opposition to [plaintiff's] motion to amend, [Defendant] only challenged the UDTPA claim in the context of a breach of contract claim, and did not discuss this alleged extra-contractual conduct.").

modification as the basis of many purported claims, the Complaint also alleges that Chase's "*communications* about the mortgage…w[ere] unlawful in a variety of ways." (Docket Entry 2 at 6.) Salami in fact alleges that Chase:

(1) approved a loan modification agreement on December 19, 2015 (*id.* at 4, 14, 19);

(2) sent the agreement to the wrong address (*id.* at 4, 11, 19);

(3) promised to send the agreement to the correct address (*id.* at 11, 19);

(4) "changed its [loan modification approval] decision" (*id.* at 4);

(5) told Salami that he must re-submit his application and "80 pages of supporting documents" (*id.* at 11, 19-21); and

(6) denied multiple applications, citing "fabricated" reasons, (*id.* at 4, 12, 20; Docket Entry 2-1 at 3).

Taking Salami's allegations as true, Salami has a facially plausible claim that Chase's conduct toward him was unfair or deceptive. For a servicer to inform an alleged borrower that he is approved for a modified loan, to change that decision and tell him to apply again, to repeatedly deny that application for reasons that the borrower contends are untrue, and to respond to multiple submissions of long applications and supporting documentation with a short and vague form letter (Docket Entry 2-1 at 5) may be unfair or deceptive. *Graves,* 2014 WL 12638789, at *3 (extra-contractual conduct may be unfair and deceptive); *Campbell*, 2014 WL 4924251, at *12-13 (M.D.N.C. Sept. 30, 2014) (finding sufficient allegations for UDTPA claim where complaint alleged that the defendant began loan modification negotiations while simultaneously proceeding with foreclosure, did not notify the plaintiffs, and caused them to forgo other remedies to prevent sale of home).

Additionally, the second and third elements of a UDTPA claim have been properly alleged. Chase's loan modification and servicing options are business activities affecting commerce, and the Complaint alleges injuries that include damages for emotional distress, resultant health damages and medical expenses, and the physical costs of and time wasted on preparing futile loan modification applications. (Docket Entry 2 at 4 and at 21-22).[13] As a result, this claim should not be dismissed.

## III. CONCLUSION

For the reasons stated above, **IT IS THEREFORE RECOMMENDED** that Defendant's Motion to Dismiss (Docket Entry 11) be **GRANTED IN PART AND DENIED IN PART** in that Plaintiff's UDTPA claim should proceed, but the Court should dismiss all of Plaintiff's other claims.

_____
Joe L. Webster
United States Magistrate Judge

June 19, 2019
Durham, North Carolina

---

[13] The Complaint also requests punitive damages. (Docket Entry 2 at 22.) "However, North Carolina does not permit the recovery of punitive damages for violations of the UDTPA." *Respess v. Crop Prod. Servs., Inc.*, No. 4:15-CV-00176-BR, 2016 WL 3821163, at *2 (E.D.N.C. July 13, 2016) (unpublished).