IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

M. REZA SALAMI, PH.D., M.D.,            )
                                        )
         Plaintiff,                     )
                                        )
    v.                                  )    1:18CV794
                                        )
JPMORGAN CHASE BANK, N.A.,              )
                                        )
         Defendant.                     )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court upon Defendant JPMorgan Chase Bank, N.A.'s ("Chase") motion for summary judgment. (Docket Entry 50.) Plaintiff M. Reza Salami ("Plaintiff") has not filed a response. Also before the Court is Plaintiff's motion to amend the Complaint regarding damages. (Docket Entry 39.) These matters are ripe for disposition. For the reasons stated herein, the undersigned will recommend that Chase's motion for summary judgment be granted and Plaintiff's motion to amend be denied as futile.

**I. BACKGROUND**

Plaintiff's Complaint sets forth allegations against Chase concerning interactions and decisions in the context of the Home Affordable Modification Program ("HAMP"). (*See generally* Complaint, Docket Entry 2). Under HAMP, Plaintiff sought to modify a home mortgage from Chase, his loan servicer. (Docket Entry 2-1 at 2-5.)[1] Plaintiff's Complaint

---

[1] All citations in this recommendation to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

concerns both the loan modification application process and Chase's decision(s) regarding whether to issue him a loan modification:

> . . . Chase Bank, NA . . . approved plaintiff loan modification for HAMP Program on December 19, 2015, but Defendant sent the approved document to [the] wrong address. Defendant promised to re-send a new approved document in March 2016. Later on, the Defendant changed its decision and requested the Plaintiff to send the new completed forms and supporting documents again and thus the Plaintiff sent the new Chase Form and supporting documents with about 80 pages for [sic] more than five times. But [sic] Chase Bank denial [sic] the Loan Modification for not being able to verify the Plaintiff['s] incomes even though the Plaintiff sent them the official incomes document. Plaintiff received the last denial letter in mid July 2018.

(Compl., Docket Entry 2 at 4.)

In his Complaint, Plaintiff asserts federal claims for violations of: (1) the Racketeer Influenced and Corrupt Organizations ("RICO") Act; (2) the Real Estate Settlement Procedures Act ("RESPA"); and (3) state law claims for breach of contract, unjust enrichment, and violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). (*Id.* at 6.) Plaintiff seeks various damages, including "actual" and punitive damages, as well as damages for emotional distress, medical expenses, the physical costs of preparing the futile loan modification applications, and a Court order for Chase to grant Plaintiff a loan modification. (*Id.* at 4, 21-22.)

In November 2018, Chase filed a motion to dismiss Plaintiff's Complaint. The undersigned subsequently recommended that the motion be granted in part and denied in part. (Docket Entry 24.) The Court thereafter adopted the recommendation and allowed Plaintiff's UDTPA claim to proceed. (Docket Entry 28.) Discovery then commenced in this action and Plaintiff filed the pending motion seeking to amend the allegations regarding damages.

2

(Docket Entry 39.) Chase filed the pending motion for summary judgement. (Docket Entry 50.) Plaintiff did not file a response to Chase's motion.

## II. DISCUSSION

### A. Plaintiff's Motion to Amend

Plaintiff has filed a motion seeking to amend his allegations in his Complaint regarding damages. (Docket Entry 39.) Chase filed an opposition brief contending that the motion should be denied as futile. (Docket Entry 41.) The undersigned agrees with the latter. Rule 15(a) of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). It further states that "[t]he court should freely give leave when justice so requires." *Id.* Granting a motion to amend a complaint is within the discretion of the Court, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Fourth Circuit has stated that "[a] district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Assocs.,* 602 F.3d 597, 603 (4th Cir. 2010).

At the outset, the Court notes that a great portion of Plaintiff's motion (and attachments thereto) is irrelevant to any issue of damages. Additionally, to the extent Plaintiff seeks to set forth various theories for damages totaling over 1.7 million dollars, the proposed amendment is futile in light of the following recommendation to grant Chase's motion for

3

summary judgment.[2] *Bishop v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, No. 2:17-CV-03064, 2018 WL 1513294, at *7 (S.D.W. Va. Mar. 26, 2018) ("Amendment is futile when the opposing party would be entitled to summary judgment on the amended claim."). Therefore, Plaintiff's motion to amend should be denied.

**B. Chase's Motion for Summary Judgment**

Chase has moved for summary judgement as to Plaintiff's UDTPA claim. (Docket Entry 50.) Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir.

---

[2] The Court further notes that even if Plaintiff's UDTPA claim were to survive summary judgment, Plaintiff could not recover both treble and punitive damages in this action. "Under North Carolina law, a plaintiff who proves a UDTPA violation and is awarded damages is entitled to 'treble the amount fixed by the verdict.'" *SAS Inst., Inc. v. World Programming Ltd.*, No. 5:10-25-FL, 2016 WL 7636698, at *2 (E.D.N.C. June 17, 2016) (citing N.C. Gen. Stat. § 75-16 (2015)); *see also Kryachov v. Mooser Moto, LLC*, No. 5:13CV73-RLV, 2013 WL 6058478, at *4 (W.D.N.C. Nov. 14, 2013)(unpublished) ("[E]ven if Plaintiff were able to recover punitive damages, she could not recover them in addition to treble damages."); *Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 165 (4th Cir. 2012) (treble damages are assessed automatically for UDTPA violations).

4

1995).  Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).  However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Anderson,* 477 U.S. at 248-49.  Here, Plaintiff is a *pro se* litigant; thus, his pleadings are to be liberally construed. *Graham v. Geneva Enters., Inc.*, 55 F. App'x 135, 136 (4th Cir. 2003).

In support of its motion for summary judgment, Chase has set forth several additional facts surrounding its interactions with Plaintiff.  Plaintiff was one of four signatories to a loan from Washington Mutual Bank, FA in the original amount of $109,350.00 by means of a promissory note dated January 7, 2004 ("the Note").  (Deposition of M. Reza Salami ("Salami Dep."), Docket Entry 51 at 9; *see also* Ex. 3, Promissory Note, Docket Entry 51-1.)  The other signatories to the Note included his then-wife, Mary M. Salami, and another couple, Shaban Kaji and Ellen P. Kaji.  (Ex. 3 at 4.)  The Note was secured by a deed of trust of a real property located at 704 Westover Terrace, Greensboro, NC ("the Westover Terrace Property"), which was recorded in the Guilford County Registry ("the Deed of Trust").  (Salami Dep. at 11; *see also* Ex. 4, Deed of Trust, Docket Entry 51-2.)  All four signatories to the Note also signed the Deed of Trust.  (Ex. 4 at 15.)  The Deed of Trust contained a "Second Home Rider,"

5

indicating that the Westover Terrace Property shall only be used as the borrowers' second home, and was not subject to any timesharing or rental agreements. (*Id.* at 17-20.)

In addition to the Westover Terrace Property, Plaintiff along with several others owned multiple other properties in Greensboro, four of which were secured by loans serviced by Chase including houses located at 1313 Oak Street, 1401 Oak Street, 3505 Euclid Street, and 923 Portland Street. (Salami Dep. at 13.) In or around 2009, Plaintiff's primary residence along with his then-wife was located at 5204 Hayward Drive in Greensboro ("the Hayward Property"). (*Id.* at 6.) He continued to reside there even after he and his then-wife separated and divorced in 2009. (*Id.*) Plaintiff testified that he moved to the Westover Terrace Property in 2014, but he continuously visited the Hayward Property, received mail at the Hayward Property, and maintained an office at the Hayward Property. (*Id.* at 5, 12.) For example, billing statements for the Westover Terrace Property mortgage continued to be addressed and delivered to Plaintiff at the Hayward Property. (*Id.* at 12, 14-15.) Additionally, Plaintiff testified that most of his mail was sent to the Hayward Property due to security concerns at the Westover Terrace Property. (*Id.* at 8-9.) Plaintiff remained at the Westover Terrace Property until 2018. (*Id.* at 5.)

Payments due under the Note for the Westover Terrace Property fell into arrears in 2015, with the loan due for payment on May 1, 2015 and all subsequent payments. (Affidavit of Jeffrey Moody ¶ 6, Docket Entry 52.)[3] On September 8, 2015, Plaintiff submitted a Request

---

[3] According to the Note, upon the borrower's failure to pay the full amount due on the date that it is due, the borrower is in default and the Note Holder may by written notice require the borrower to immediately pay the full amount of the remaining principal and interest owed. (*See* Docket Entry 52-1 at 3.)

6

for Mortgage Assistance Form ("RMA") to Chase for the Westover Terrace Property. (Salami Dep at 18-19; Moody Aff. ¶ 8; Ex. C, RMA, Docket Entry 52-3.) Plaintiff testified that he personally entered all of the information into the RMA and was not assisted by anyone. (Salami Dep. at 19.) On the RMA, Plaintiff identified his mailing address as "5204 Hayward Drive, Greensboro, NC 27406." (Docket Entry 51-3 at 2.)

In September 2015, Chase communicated with Plaintiff by telephone to discuss the RMA and verified that his phone number ending in 6099 was the proper way to reach him. (Moody Aff. ¶ 10.) After reviewing Plaintiff's RMA, Chase approved Plaintiff for a Trial Period Plan ("TPP") by letter dated December 19, 2015. (*Id.* ¶ 11; *see also* Ex. D, TPP Approval Letter, Docket Entry 52-4.) The conditions of the TPP made clear that it was not a permanent modification of the Note, but an opportunity to obtain a permanent modification under certain conditions including making timely payments under the TPP. (Ex. D at 4.) It further stated that Chase would not proceed with a foreclosure sale during the TPP, and that Plaintiff's current loan documents remained in effect. (*Id.* at 4-5.) To accept the TPP, Plaintiff only needed to make three payments due February 1, 2016, March 1, 2016, and April 1, 2016 before a separate Modification Agreement would be sent to him to modify the loan, if he qualified. (*Id.* at 2; *see also* Moody Aff. ¶ 15.)

Chase sent the TPP letter to the Hayward Property address, consistent with the mailing address provided by Plaintiff in the RMA and consistent with how all billing statements related to the account were mailed. (Moody Aff. ¶ 12.) The TPP letter was never returned to Chase as undeliverable. (*Id.* ¶ 13.) Chase attempted to reach Plaintiff by telephone multiple times after mailing the TPP letter by calling the same phone number ending in 6099 in order to

7

discuss the plan. (*Id.* ¶ 14.) Between December 2015 and February 2016, seven calls were made to Plaintiff, none of which were answered or returned to Chase. (*Id.*) Further, Plaintiff made no payments under the TPP. (*Id.* ¶ 16.)

On March 9, 2016, after two payments were missed under the TPP, Chase sent a letter to the 5204 Hayward Drive address indicating that the TPP was cancelled due to Plaintiff's failure to make the payments required by the plan. (*Id.* ¶ 17; *see also* Ex. E, March 9, 2016 Letter, Docket Entry 52-5.) On March 23, 2016, Plaintiff called Chase and stated that he did not receive the December letter regarding the TPP because his ex-wife stole the document. (Moody Aff. ¶ 18.) Plaintiff was told that since his TPP had lapsed, he would need to reapply for mortgage assistance. (*Id.*) Plaintiff subsequently submitted additional requests for mortgage assistance, but after review of each request, no further TPPs or loan modifications were offered to Plaintiff. (*Id.* ¶ 20.) Chase responded to each of these requests in writing and set forth the grounds for the denial of Plaintiff's request. (*Id*; *see also* Ex. F, Chase Letter Responses, Docket Entry 52-6.)

The first responsive letter was sent on August 10, 2016, informing Plaintiff that he could not be approved for six different types of loan modification programs, because Chase "could not verify [Plaintiff's] income, employment, assets, identity, and/or property occupancy based on the information [he] provided." (Ex. F, Docket Entry 52-6 at 5.) Though his requests for a modification of his loan were declined, Chase did offer to consider Plaintiff for a short sale, which would have permitted Plaintiff to sell the property for less than the full loan payoff. (*Id.* at 4; *see also* Salami Dep. at 26.)

8

Plaintiff appealed this decision and on September 13, 2016, Chase responded with a letter informing Plaintiff that Chase had conducted an independent evaluation of his application for assistance and confirmed its decision was correct. (Salami Dep. at 27; *see also* Ex. 23, September 13, 2016 Letter, Docket Entry 51-10.) Specifically, Chase informed Plaintiff that it could not verify occupancy status, his income, utility bills and tax information based upon the documents it received. (Ex. 23 at 1-2.) Additionally, Chase was unable to verify the source of cash deposits on the bank statements Plaintiff provided, and there were multiple properties Plaintiff owned which he did not list on the RMA. (*Id.* at 2.)

Plaintiff testified at the deposition that he was 99% certain that he had seen the September 2016 letter. (Salami Dep. at 27.) When presented with bank account statements that he submitted in connection with his request for assistance, Plaintiff could not explain numerous deposits and withdrawals or the existence of multiple accounts. For example, Plaintiff testified that in 2016, his primary source of income was a monthly social security benefit check in the amount of $2,211. (*Id.* at 20.) His February 2016 bank statement showed over $4,500 of deposits beyond his social security check, some of which Plaintiff could not explain, nor identify the bank account from which these funds were transferred. (*Id.* at 33-35.) During the months of June and July 2016, Plaintiff's bank account statements showed deposits of nearly $20,000, most of which he was not completely sure where it came from. (*Id.* at 39-45; *see also* Ex. 34, Bank Statement, Docket Entry 51-20.) He did, however, indicate that family gave him some, and some may have come from insurance damages and a foreclosure sale. (Salami Dep. at 41, 43, 45.)

9

In October 2016, during another attempt for mortgage assistance, Plaintiff completed another RMA and indicated that his sole source of income was his $2,211 social security benefit check, but that he had monthly household expenses of $1,890 and living expenses of $1,130 while having assets worth $1,310. (Ex. 10, RMA, Docket Entry 51-4 at 5-6.) His August and September 2016 bank account statements showed additional unexplained transfers and deposits, and the entire first page of his September statement appeared blank. (Salami Dep. at 45-47; Exs. 35 and 36, Bank Statements, Docket Entries 51-21, 51-22.) Chase informed Plaintiff that his October 2016 RMA request was incomplete, because it had not received an IRS Form 4506-T to obtain tax transcripts and earning stubs. (Ex. 25, October 17, 2016 Letter, Docket Entry 51-11.) Plaintiff was given until November 16, 2016 to provide the documents. (*Id.* at 1.)

Plaintiff's request for assistance was again denied by letter dated December 9, 2016. (Ex. 26, December 9, 2016 Letter, Docket Entry 51-12.) Again, Plaintiff was informed by Chase that he could engage in a short sale of the property, however he did not qualify for mortgage assistance because Chase "could not verify [Plaintiff's] income, employment, assets, identity, and/or property occupancy based on the information [he] provided." (*Id.* at 3-4.) Plaintiff appealed, and Chase responded by letter informing Plaintiff that Chase could not validate his income and the occupancy status of the property. (Ex. 27, January 18, 2017 Letter, Docket Entry 51-13.)

While Plaintiff's previous RMA was pending, he submitted another RMA. (Ex. 11, RMA, Docket Entry 51-5.) Again, Chase declined to offer a loan modification, but did offer to accept a short sale or a deed in lieu of foreclosure. (Ex. 28, April 14, 2017 Letter, Docket

10

Entry 51-14 at 3-4.) Plaintiff again appealed this denial and Chase responded by informing Plaintiff that it was "unable to validate [his] bank statements with [his] bank" and that documents submitted with his request had been altered as verified by his utility company. (Ex. 29, May 19, 2017 Letter, Docket Entry 51-15.) Plaintiff was also informed that his May 1, 2015 mortgage payment was due, "along with all subsequent payments and applicable fees." (*Id.* at 1.)

In September 2017, Plaintiff submitted yet another RMA which he asserted new expenses, including $2,200 for "child support/alimony." (Ex. 13, RMA, Docket Entry 51-6 at 2.) Plaintiff also asserted that 4 persons lived in the home and that individuals named "Brad Dawson and Chris Hammett" contributed financially to the household, but no rent was described in Plaintiff's statement of income. (*Id.*) Moreover, this RMA disclosed that Plaintiff owned property located at 4624 Groometown Road in Greensboro, NC described as a "second/seasonal home" with a $336.98 monthly mortgage. (*Id.* at 3.) In the comments section regarding the Groometown Road property, Plaintiff stated, "My family and two of her children are living there since I have to support them according USCIS." (*Id.*) Chase declined this RMA due to the inability to "verify income, employment, assets, identity, and/or property occupancy," however Chase still provided Plaintiff with the opportunity for a short sale or to deed the property in lieu of foreclosure. (Ex. F, Docket Entry 52-6 at 42-43.) Finally, Plaintiff submitted another RMA on March 19, 2018. (Ex. 14, RMA, Docket Entry 51-7.) The request for mortgage assistance was denied on similar grounds. (Ex. F, Docket Entry 52-6 at 59.)

As previously stated, Plaintiff's remaining claim in this action is a UDTPA claim. N.C. Gen. Stat. § 75-1.1(a) states: "Unfair methods of competition in or affecting commerce, and

11

unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). "[A]n action for unfair or deceptive acts or practices is a distinct action apart from fraud, breach of contract, or breach of warranty." *Bernard v. Cent. Carolina Truck Sales,* 68 N.C. App. 228, 232, 314 S.E.2d 582, 585, *rev. denied,* 311 N.C. 751, 321 S.E.2d 126 (1984). To establish a prima facie claim under the UDTPA, a party must show that "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001) (citation omitted)*; see also South Atl. Ltd. P'ship of Tenn., L.P. v. Riese*, 284 F.3d 518, 535 (4th Cir. 2002). Whether an act is deemed unfair or deceptive is "a question of law for the court." *Dalton*, 353 N.C. at 656, 548 S.E.2d at 711 (citation omitted). An act or practice is unfair "if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and is deceptive "if it has the capacity or tendency to deceive." *Ace Chem. Corp v. DSI Transp., Inc.*, 115 N.C App. 237, 247, 446 S.E.2d 100, 106 (1994) (internal citations and quotations omitted).

At the outset, the Court notes that Plaintiff has not filed a response to Chase's motion. Because Plaintiff failed to file a timely response, Chase's motion for summary judgment could be granted as a matter of course pursuant to Local Rule 7.3(k). Where a party fails to file a timely response, the motion will be "considered and decided as an uncontested motion, and ordinarily will be granted without further notice." Local Rule 7.3(k); *see also Kinetic Concepts, Inc. v. ConvaTec Inc.*, No. 1:08CV918, 2010 WL 1667285, at *6-8 (M.D.N.C. Apr. 23, 2010) (unpublished) (analyzing this Court's Local Rules 7.3(f), 7.2(a), and 7.3(k) and discussing authority supporting proposition that failure to respond to argument amounts to concession).

Alternatively, the Court recommends that the motion for summary be granted because there is no genuine dispute as to any material fact and Chase is entitled to judgment as a matter of law.

The evidence presented by Chase, including Plaintiff's own testimony, demonstrates that Plaintiff has failed to set forth a prima facie case for violations under the UDTPA. Plaintiff's Complaint essentially alleges that: (1) Chase approved him for a modified loan; (2) Chase subsequently altered that decision and told Plaintiff to reapply for mortgage assistance; (3) Chase then repeatedly denied Plaintiff's RMA applications for reasons that the he contends are untrue; and (4) Plaintiff was forced to respond to multiple submissions of long applications and supporting documentation. (*See generally*, Compl., Docket Entry 2.) However, as detailed above, Chase in fact never approved final modification for Plaintiff, but rather established a TTP for Plaintiff to work towards final modification of his home loan. When Plaintiff failed to make the required payments, Chase made numerous attempts to contact Plaintiff prior to cancelling the TPP. Chase further informed Plaintiff that he could reapply for mortgage assistance. Due to its inability to verify important information, Chase denied Plaintiff on numerous occasions. Chase persistently attempted to communicate with Plaintiff through the telephone number and mailing address that Plaintiff himself provided. Based upon the deposition testimony and the affidavit of Chase's representative, Chase's conduct is devoid of any unfair and deceptive acts necessary to establish a UDTPA claim.

To the extent Plaintiff claims that his relief stems from the HAMP guidelines, his argument fails. This Court previously outlined HAMP in *Campbell v. CitiMortgage, Inc.*, No.

13

Case 1:18-cv-00794-TDS-JLW   Document 56   Filed 06/12/20   Page 13 of 16

1:11CV1017, 2014 WL 4924251, at *6 (M.D.N.C. Sept. 30, 2014) (unpublished), *report and recommendation adopted*, No. 1:11CV1017, 2015 WL 127818 (M.D.N.C. Jan. 8, 2015):

> "HAMP… is governed by guidelines set forth by Fannie Mae and the United States Department of the Treasury. The [Servicer Participation Agreements] between mortgage loan servicers and Fannie Mae require the servicers to perform loan modification and foreclosure prevention services specified in the HAMP Guidelines." . . . When considering a HAMP modification, a servicer first must determine whether a homeowner meets the applicable eligibility requirements. . . . If eligible, the servicer implements a Trial Period Plan ("TPP") under new repayment terms . . . . "After the trial period, if the borrower complied with all terms of the TPP Agreement—including making all required payments and providing all required documentation—and if the borrower's representations remained true and correct, the servicer had to offer a permanent modification." . . . Finally, during the modification review period, the servicer must refrain from foreclosing.

(citations omitted).

As previously stated, Plaintiff never successfully completed the terms of the TPP, and consequently, Chase never offered permanent modification of the loan. In a recent decision, this Court dismissed a UDTPA claim even where, unlike here, there was *partial* completion of the TPP. *See Richards v. PHH Mortgage Corp.*, No. 1:19-cv-759, 2020 WL 1234634 (M.D.N.C. March 13, 2020) (unpublished). In *Richards*, the plaintiff made two of the three required TPP payments and upon submitting her third payment, she was informed that her loan modification was declined. (*Id.* at *2.) The plaintiff was originally told twice that she was eligible for a loan modification. (*Id.* at *1-2.) Still, the lender denied her a permanent loan modification after accepting two of her TPP payments. (*Id.* at *2.) In denying the modification, the lender informed the plaintiff that she was ineligible because the loan had already reached its maturity date. (*Id.*) As to the plaintiff's UDTPA claim, this Court held that

14

it "cannot find as a matter of law that [the lender's] actions r[o]se to the level of 'substantial aggravating circumstances' [as] [t]here d[id] not appear to be any behaviors rising to the level of forged documents or fraudulent inducement[.]" (*Id.* at *10.) While the lender may have been "unfair" in refusing to complete the loan modification, such behavior did not "rise to the level of unethical or unscrupulous" behavior required to substantiate a UDTPA claim. (*Id.*)

Here, while Plaintiff's Complaint survived early dismissal, the subsequent evidence and admissions of Plaintiff demonstrates the lack of merit of the allegations set forth in the Complaint; thus, it fails to survive summary judgment. Albeit a different procedural posture than *Richards*, Plaintiff here is still unable to demonstrate unfair or deceptive acts at the summary judgment stage. There is no egregious conduct on the part of Chase in its initial communications regarding the TPP. Moreover, its decision to deny additional RMA applications from Plaintiff is without egregious conduct. There were no fabricated reasons for denial; Chase continuously informed Plaintiff that it was unable to verify very important information. Even if Plaintiff misunderstood Chase, "[m]isunderstandings, despite their capacity to deceive, ordinarily are insufficient to sustain a claim of deceptive conduct under the UDTPA." *Curtis B. Pearson Music Co. v. Everitt*, 368 F. App'x 450, 456 (4th Cir. 2010) (unpublished).

Ultimately, the Courts largely consider the impact of the marketplace in determining whether conduct is unfair or deceptive. *See Howard v. Carroll Companies, Inc.*, No. 1:12CV146, 2013 WL 3791619, at *14 (M.D.N.C. July 19, 2013) (unpublished) ("The facts surrounding the transaction and the impact on the marketplace determine whether a particular act is unfair or

deceptive, and this determination is a question of law for the court.") (quoting *Noble v. Hooters of Greenville (NC), LLC,* 199 N.C.App. 163, 167 (2009)). Under the circumstances, the conduct from Chase—extending the TPP to Plaintiff; making numerous attempts to contact Plaintiff; inviting Plaintiff to reapply for mortgage assistance after failing to make payments under the TPP; and providing adequate and clear reasons for its denial of subsequent RMA applications—neither negatively impacts the marketplace no does it create an unfair method of competition on the part of Chase. As such, Plaintiff's UDTPA claim fails.

## III. CONCLUSION

For the reasons stated above, **IT IS THEREFORE RECOMMENDED** that Plaintiff's Motion to Amend (Docket Entry 39) be **DENIED**, Defendant's Motion for Summary Judgement (Docket Entry 50) be **GRANTED**, and Plaintiff's Complaint be dismissed with prejudice.

								 _____
								 Joe L. Webster
								 United States Magistrate Judge

June 12, 2020
Durham, North Carolina